**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Criminal No. JFM-12-0121 |
| v. | ) | |
| | ) | **REPLY TO GOVERNMENT'S** |
| | ) | **RESPONSE IN OPPOSITION TO** |
| CRAIG BENEDICT BAXAM, | ) | **DEFENDANT'S MOTION TO** |
| | ) | **DISMISS THE INDICTMENT** |
| Defendant. | ) | **AND FIRST MOTION IN LIMINE** |
| | ) | |

\* \* \* \* \* \* \* \* \*

CRAIG BAXAM respectfully submits this memorandum in Reply to the government's Response in Opposition to his Motion to Dismiss the Indictment and First Motion in Limine.

## INTRODUCTION

Defendant Craig Baxam moved to dismiss the indictment on grounds that the government failed to allege facts sufficient to satisfy the indictment. In his First Motion in Limine, Mr. Baxam also moved to preclude the admission of statements allegedly uttered by him, as irrelevant, and not probative to the charge against him.

The government opposed Mr. Baxam's Motion to Dismiss, arguing that a violation of § 2339B could be based on independent, uncoordinated, conduct. In support, the government argues for a construction of § 2339B that runs afoul of the statutory language, congressional intent, the applicable case law, and the First and Fifth Amendments of the U.S. Constitution. In doing so, the government articulates a theory of culpability that conflates the *actus reus* of

1

attempt (substantial step) with the "act in furtherance" requirement of conspiracy. Therefore, for the reasons further articulated in Point I below, the indictment should be dismissed.

The government also opposed Mr. Baxam's First Motion In Limine, arguing that the motion is an attempt to characterize his statements "as mere speculation and not, as they are in actuality, evidence of what he had done, intended to do, and would have done were he not arrested." However, their argument repeats the failing of the unrecorded, non verbatim excerpts of FBI interviews of Mr. Baxam and substitutes, beyond speculation and in a vacuum, hypotheticals for criminal intent. Thus, the Court should preclude their admission.

## ARGUMENT

### POINT I.

### THE COURT SHOULD DISMISS THE INDICTMENT

**A. A Violation of 2339B for "Personnel" Cannot Be Based On Independent Acts—It Requires Coordination.**

The government erroneously argues that Mr. Baxam "adds an additional 'coordination' element to 18 U.S.C. §2339B." GB at 11. Simply put, a violation of § 2339B for "personnel" cannot be based on independent acts—it requires some level of coordination. The government's proposition that independent, uncoordinated, conduct may constitute an attempt to provide *oneself-as-personnel* under 2339B is without merit, and runs contrary to the statutory text, congressional intent (both explicit and implied) and *all* applicable case law.

In defining the "personnel," provision of § 2339B (including the provision of *oneself* as personnel) Congress specified that such support requires working under the "direction or control" of a foreign terrorist organization, adding a clarifying provision that "[i]ndividuals who act

entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." § 2339B(h). In interpreting § 2339B, the Supreme Court in *Humanitarian Law Project* repeatedly and emphatically stressed that the material support statute cannot be deployed to punish "independent" acts for the provision of service and/or oneself-as-personnel. *Id.* at 2721-23, 2730. It only follows that acts taken *entirely independently of the FTO* cannot constitute an attempt to work under the FTO's direction and control.

The *sole* case cited by the government for its proposition that independent conduct may constitute an attempt to provide *oneself-as-personnel* under 2339B, *United States v. Farhane*, 634 F.3d 127 (2nd Cir. 2011), is both legally and factually inapposite. In *Farhane*, the defendant's conduct was anything but independent: he met "with a purported al Qaeda member," *Id.* at 149; he "provided private and work contact numbers for al Qaeda members to reach him" when they needed his medical services, *Id.*; he "committed to work under al Qaeda's direction," GB at 11-12 (citing *Id.*); and he took "an oath of allegiance to al Qaeda." *Id.* (citing *Farhane* at 149-50). Each one of these acts was *coordinated* with a purported al Qaeda member – none constituted independent conduct.

By contrast, the government does not dispute that Mr. Baxam's travel to Kenya was done independently, without *any* form of coordination with al Shabaab. Nor does the government allege that Mr. Baxam's travel *indirectly* coordinated with al-Shabaab. For instance, there is no allegation that the defendant went to Somalia upon reading al-Shabaab literature instructing him to a "meeting place" or "recruitment point" whereupon he could provide al-Shabaab with personnel by agreeing to work under their direction and control. Nor is there an allegation that Mr. Baxam conducted research about al-Shabaab recruitment, from which an *attempt to*

*coordinate* with al Shabaab might arguably be inferred.[1] Thus, *Farhane* works *against* the government's theory of culpability that independent travel to *Kenya* constitutes a "substantial step" towards the crime of working under the direction and control of al-Shabaab.

**B. § 2339B Should Not Be Construed to Criminalize Independent, Uncoordinated Travel**

Appreciating the broad-reaching implications of § 2339B, Congress added a "[r]ule of construction" making explicit that "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(i). A construction of § 2339B that supports the Indictment abridges the First Amendment as expressed through (1) travel (as alleged here: to Kenya),[2] (2) association (as alleged here: with Islam, Islamic Sharia and al-Shabaab) and (3) harboring criminal intent (as alleged here: to work under the direction of al-Shabaab).[3] *See Caminetti,* 242 U.S. at 490; compare *United States v. Bredimus*, 352 F.3d 200, 208 (5th Cir. 2003) (statute criminalizing traveling in foreign commerce for the purpose of engaging in a sexual act with a juvenile was constitutional because the substantive criminal act was engaging in travel, *not* a sexual act with a juvenile); *United States v. Han*, 230 F.3d 560, 563 (2d Cir. 2000) (coordination between defendant and juvenile obviated the need to determine constitutionality of statute criminalizing the "mere thought of engaging in a sexual act with a person under 18 years of age,

---

[1] Moreover, an attempt to *coordinate* with al-Shabaab is merely an attempt to attempt to provide oneself-as-personnel, and thus not a violation of § 2339B.
[2] In both *Zemel v. Rusk*, 381 U.S. 1 (1965) and *Kent v. Dulles*, 357 U.S. 116 (1958), the Supreme Court intimated that international travel is to be afforded the protection of the Fifth Amendment, while in *Aptheker v. Secretary of State*, 378 U.S. 500 (1964), the Court suggested that in certain situations, the right to international travel may be afforded First Amendment protection.
[3] In light of § 2339B(i), and the alleged conduct, counsel is at odds with how this court might fashion proper instructions to the jury.

4

coupled with crossing a state line"). Moreover, a construction of § 2339B that criminalizes independent travel raises vagueness issues, as applied to Mr. Baxam in the indictment.[4]

As the Supreme Court has instructed, "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347 (1941); C. Wright, Federal Practice & Procedure: Criminal 2d § 142 at 477-78 (1982).  Thus, to the extent there is any ambiguity whether the conduct at issue here constitutes "material support" under §2339B, or is exempted under §2339B(i), the rule of lenity should be applied at this stage because the §2339B charge, which relies on protected First Amendment activity to satisfy the "material support" element, in contravention of statutory language, Congressional intent, and case law, will at the very least create the "grievous ambiguity or uncertainty" necessary for invocation of the rule of lenity.  *See Chapman v. United States,* 500 U.S. 453, 463 (1991).  Therefore, the indictment should be dismissed.

### C. The Indictment Conflates the Actus Reus of Attempt (Substantial Step) with the "act in furtherance" Requirement of Conspiracy.

The indictment's theory of culpability conflates the *actus reus* of attempt (substantial step) with the "act in furtherance" requirement of conspiracy. To obtain a conspiracy conviction, the government need only allege that the conspirators agreed to undertake a criminal scheme and, at most, that they took an overt step in pursuance of the conspiracy. MODEL PENAL CODE § 5.03 commentary at 387-88.  Even an insignificant act, such as independent, travel, may suffice to demonstrate an "act in furtherance."  *Id.* § 5.03(5) commentary at 454. By contrast, "liability

---

[4] The defense reserves the right to raise the vagueness issues presented by the government's construction of 18 U.S.C. § 2339B.

for attempt attaches if the defendant's actions have proceeded to the point where, if not interrupted, would culminate in the commission of the underlying crime." *United States v. Polk*, 118 F.3d 286, 291 (5th Cir. 1997).

As an inchoate crime, "conspiracy allows law-enforcement officials to intervene at a stage far earlier than attempt does."  Ira P. Robbins, Double Inchoate Crimes, 26 Harv. J. on Legis. 1, 116 (1989) (citing MODEL PENAL CODE § 5.03 commentary at 387-88).  This is because the purpose behind the criminal offense of attempt is to prevent the completed offense, while that of conspiracy is twofold: (1) preventing a completed offense; and (2) punishing the additional dangers inherent in group activity. *See* MODEL PENAL CODE § 5.03 commentary at 386-91.  In theory, once an individual reaches an agreement with one or more persons to perform an unlawful act, it becomes more likely that the individual will feel a greater commitment to carry out his original intent, providing a heightened group danger. *See Callanan v. United States*, 364 U.S. 587, 593 (1961) ("concerted action . . . decreases the probability that the individuals involved will depart from their path of criminality"); *Developments in the Law—Criminal Conspiracy*, 72 HARV. L. REV. 920, 924 (1959) ("A conspirator who has committed himself to support his associates may be less likely to violate this commitment than he would be to revise a purely private decision."); *see also* Ira P. Robbins, *Double Inchoate Crimes,* 26 HARV. J. LEGIS. 1, 116 (1989).[5]

---

[5] The special-danger rationale modifies the standards defining attempt by treating the act of engaging another in a criminal scheme as an act unequivocally manifesting the actor's criminal intent:

> The act of agreeing with another to commit a crime, like the act of soliciting, is concrete and unambiguous; it does not present the ***infinite degrees and variations possible in the general category of attempts***. The danger that truly equivocal behavior may be

Here, the indictment in effect alleges a "conspiracy" without an agreement or a co-conspirator. Travel to Kenya might meet the "act in furtherance" standard in a conspiracy allegation, but it does not meet the "substantial step" standard required for attempt. An allegation of *conspiracy* to provide material support to an FTO might be demonstrated by an agreement plus an *additional preparatory act*, thus travel by the defendant might fairly be described as cementing the conspiratorial goal and rendering the defendant liable for his *actions (not merely thought)*. Similarly, allegations of attempt to provide material support to an FTO are often made in the context of a "sting operation" where the defendant is alleged to have made an agreement with a confidential informant or undercover agent. Both hypotheticals involve *additional preparatory acts* of coordination by the accused with a purported representative of the FTO. Neither involves mere independent conduct.

In short, the "substantial step" alleged by the government does not *in any way* distinguish between acts that would result in culpable conduct of working under the direction and control of an FTO and independent preparatory conduct protected by the Constitution, statute and the case law. Without alleging an act of coordination—such as an allegation of pre-travel contact with a purported al-Shabaab member or recruiter, or indirect coordination, as may be arguably inferred from a response to an open-call for personnel—the indictment criminalizes independent travel by an individual from the United States to a foreign country. Failing to support the minimal requirements of attempt, the indictment fails to present a meaningful *actus reus* and must be dismissed. *See Stanley v. Georgia*, 394 U.S. 557, 565 (1969) ("Our whole constitutional heritage

---

> misinterpreted as preparation to commit a crime is minimized; purpose must be relatively firm before the commitment involved in agreement is assumed.

MODEL PENAL CODE § 5.03 commentary at 388 (Proposed Official Draft 1985) (emphasis added).

rebels at the thought of giving government the power to control men's minds"); *Stephan v. Perry*, 41 F.3d 677, 713 (D.C. Cir. 1994) (describing the crime of "constructive treason" under Edward III, enforced against supposed "imaginers" even when no overt act or agreement corroborated an intent to carry out regicide).

### D. The "Surrounding Factual Circumstances" Weigh Against the Existence of a "Substantial Step."

The government argues that a "substantial step depends on the 'surrounding factual circumstances' and, therefore, such determinations are necessarily fact specific." GB at 11. In doing so, the government parses Mr. Baxam's travel to Kenya into multiple sub-steps ("cashing out his TSP for $3500," *Id.* at 4, "purchasing his airline ticket to Kenya for $1600," *Id.*, "boarding an airplane," and "traveling [by ground] towards Somalia"). *Id.* at 11. Taken together, or individually, the governments allegations do not meet the standard for a "substantial step" *as a matter of law*.

First, the alleged facts do not support an inference that Mr. Baxam cashed out his TSP for the purpose of providing funds to al-Shabaab. Mr. Baxam had only $600-700 dollars when he left the United States. GB at 5. This means that Mr. Baxam spent the majority of his savings—$2900, less $1600 for a round-trip ticket to Kenya—in the United States before ever departing for Kenya. Moreover, a February 14, 2012 FBI 302 report indicates that Mr. Baxam only had a few US dollars and $178 dollars in *Kenyan* schillings on his person at the time of arrest, a fact that weighs against any allegation that he was firm on his intent to enter Somalia in the first place.[6]

---

[6] Defense counsel recently conducted an extensive investigation on another matter in Somalia, where the preferred foreign currency is U.S. dollars, not Kenyan Shillings.

8

Nor do the facts indicate that Mr. Baxam's travel to Kenya came "so near to the accomplishment of the crime that it [become] *probable*" that Mr. Baxam would work under the direction and control of al-Shabaab "absent an outside intervening circumstance." GB at 12 (*citing United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003)).  At best, Mr. Baxam's purchase of a *round-trip* ticket to Kenya, and haphazard travels therein, imply mere preparation.  The allegations may indicate an uncertainty of mind, but they do not describe an act that has "proceeded to the point where, if not interrupted, would culminate in the commission of the underlying crime."  *Polk*, 118 F.3d at 291.

As such, the conduct alleged by the government does not *in any way* distinguish between steps that would result in culpable conduct (here: working under the direction and control of an FTO) and "independent conduct" protected by the constitution, statute and the case law.[7]  The government attempts to remedy this flaw by using select post-arrest statements to characterize his independent conduct as criminal.  However, as conceded by the government, Mr. Baxam's post-arrest statements are riddled with "seeming inconsistencies [that] occurred during the defendant's interviews." GB at 16.  Moreover, even if the alleged statements were in any way consistent, Mr. Baxam's alleged conduct cannot be "upgraded" from mere preparation to a substantial step on the basis of speculative statements and *post-hoc* innuendo as to scienter. Nor can the government rely on statements expressing unpopular but lawful views to do the same. "One who is merely present with other members of the organization, but is not under the organization's direction and control, is not part of the organization's personnel." GB at 9-10 (*citing United States v. Lindh*, 212 F.Supp.2d 541, 572 (E.D.Va. 2002)).  Failing to allege the minimal requirements of attempt, the indictment fails and must be dismissed.

---

[7] This risks the improper shifting of the burden to the defendant to prove a negative.

# POINT II
## STATEMENTS SHOULD BE PRECLUDED AS IRRELEVANT, PREJUDICIAL AND PROTECTED UNDER THE FIRST AMENDMENT

"There is nothing either good or bad, but thinking makes it so."
― William Shakespeare, *Hamlet*

The government's response has done nothing to undermine the arguments set forth in the Motion in Limine to preclude the admission of statements allegedly uttered by Mr. Baxam. In fact, their arguments demonstrate that this prosecution essentially relies on speculative, hypothetical replies they claim Mr. Baxam made to future scenarios posed by FBI agents. There is no transcript of the actual interviews since the government chose not to record any of them. Incomplete, non-verbatim summarized FBI reports thus form the gravamen of the government's case. In a prosecution built mainly on government-controlled interviews, the lack of a record is especially troubling. Nonetheless, the government cannot run from the hypothetical and clearly irrelevant nature of Mr. Baxam's replies as alleged.

The government freely mischaracterizes and misquotes statements they claim Mr. Baxam made as "admissions". The following excerpt from their brief summarizes their case against Mr. Baxam and why these statements, *if* made, were *not* admissions of any incriminating specific intent and are therefore irrelevant, prejudicial and inadmissible.

> By saying that he would be happy to be a martyr (December 30 interview), that he *might* die by being hit by a missile (December 30 interview) or with a gun in his hand (December 27 interview) and being dismissive of the Tablighi Jamaat for being pacifist (December 27 interview), among other things, the defendant clearly *foresaw* a time when he would fight for Al Shabaab, even *if* that fight was against the United States.

Doc. 37, Page 15. Emphasis added.

By their own arguments, the government would criminalize and punish speculative, future and hypothetical conduct. *Maybe, someday*, if all the conditions are right, Mr. Baxam *might* see

10

himself fighting for al Shabaab. What is being punished here? His contemplations?

Exhibit D is the December 30th FBI report which references the discussions about 'martyrs' and 'being hit by a missile'. Their own account reflects that in response to unrecorded questions, Mr. Baxam indicated he "envisioned the *possibility* of dying on this journey-*if* that was Allah's will-by dying of disease, while en route to Somalia or by being blown up by a missile." *See Pages 2, 3.* None of those speculative statements of how he might die are 'admissions' probative of scienter.

Exhibit C is the December 27th FBI report which references the discussions with Mr. Baxam about hypothetical events regarding dying with a gun in his hand. Again, in response to some hypothetical questions about possible future death scenarios, their report claims that Mr. Baxam saw himself possibly dying from 'Malaria' or hit by a rocket. These statements are not admissions reflecting a criminal intent. They are mere speculations. Maybe, someday he might die from a disease or a rocket. Who knows?

What is missing from the government's arguments is more telling that what is written. There is no evidence Mr. Baxam communicated with, associated with, coordinated with anyone associated with al Shabaab. There is no evidence Mr. Baxam was armed or sought to purchase weapons. There is no evidence that Mr. Baxam was on his way to any training camp to be trained as a soldier for al Shabaab. There is no evidence Mr. Baxam swore any oath or allegiance to al Shabaab. The heart of this prosecution is built on unrecorded, non-verbatim statements in response to hypothetical questions. Those statements are not relevant to the crime of attempted material support of al Shabaab and should therefore be excluded.

11

## CONCLUSION

Accordingly for the foregoing reasons, Mr. Baxam respectfully requests oral argument on his motions, preclusion of statements made during FBI interviews, and for a dismissal of the indictment in its entirety.

Respectfully submitted,

*/s/ Linda Moreno*

LINDA MORENO

Florida Bar No. 0112283

Linda Moreno P.A.

P.O. Box 10985

Tampa, Florida 33679

(Telephone): 813.247.4500

(Email): lindamoreno.esquire@gmail.com

Attorney for CRAIG BAXAM


*/s/ Ahmed Ghappour*

AHMED GHAPPOUR

(Admission Pending)

National Security Clinic

University of Texas, School of Law

727 East Dean Keeton St.

Austin, Texas 78705

(Telephone): 512.232.1598

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed using the District of Maryland CM/ECF system.

                                                 */s/ Linda Moreno*

                                                 Linda Moreno

                                                 Attorney for Craig Baxam